CLERK'S OFFICE
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
WASHINGTON, D.C.  20001

| | | |
|---|---|---|
| UNITED STATES | : | |
| | : | Criminal No. 05-cr-00206 (EGS) |
| *v*. | : | |
| | : | |
| HOUSTON QUILDON | : | |
| | : | |

_____

**DEFENDANT'S MOTION FOR MODIFICATION
OF PRETRIAL DETENTION ORDER AND
MEMORANDUM OF POINTS AND AUTHORITIES**

COMES NOW the Defendant Houston Quildon, (hereinafter "Quildon"), by and though undersigned counsel, hereby moves this Court, pursuant to 18 U.S.C. § 3145(b), to vacate the pretrial detention order, and to release Mr. Quildon into the third-part custody of the Intensive Supervision Program of the Pre-Trial Services Agency, alternatively into a halfway house with work release, or any other form of conditional release deemed appropriate by the Court.  As grounds for this motion Mr. Quildon states as follows:

1. On June 2, 2005, Mr. Quildon was arrested and charged in a fourteen count indictment with charges of Distribution of Cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), 841(b)(1)(A)(iii) and 18 U.S.C. § 2 , Counts 1, 3, 5, 7, 9, 11 and 13; and Unlawful Distribution of Cocaine Base Within 1000 Feet of a School and Aiding and Abetting, in violation of 21 U.S.C. § 860(a) and 18 U.S.C. § 2, Counts 2, 4, 6, 8, 10, and 14.

1. On February 23, 2006, undersigned counsel entered their appearance as attorneys of record for Mr. Quildon.

2. Mr. Quildon is a 43-years old resident of the Washington, D.C. metro area.

3. He has been married for over ten years and is the father of four children.

4. At the time of his arrest, he was gainfully employed as a barber at the shop "Cut N Up." His employer has confirmed that he can return to work if released.

5. As this Honorable Court is aware, Mr. Quildon has been diagnosed with cancer. While housed at CTF, he began vomiting regularly and sought medical attention. Upon running a series of test, it was determined through a biopsy that he had cancer in and around his lungs and esophagus.

6. On or about July 11, 2006, Mr. Quildon was hospitalized at Howard University hospital and, after ten hours of surgery, he was transferred to the secure wing of Greater Southwest Hospital.

7. During the surgery, the doctors realized, after the initial incision, the extent of the cancer. In an attempt to remove all the cancer, the doctors cut Mr. Quildon from the middle of his chest to his belly button and then around the right side to the middle of his back. His right lung collapsed. Additionally, he had a very high fever, (106 degrees), that would not come down. He was given penicillin. Mr. Quildon is allergic to penicillin and broke out in a rash all over his body. After stabilizing him, the doctors determined that they did not get all the cancer and another operation was scheduled.

8. On August 4, 2006, Mr. Quildon had his second operation. He has lost over 75 lbs and is a mere shell of his former self. He has a tube connected to his stomach area that drains fluids from his body. The fluids were filled with brownish puss. According to the doctors, this fluid must be clear and Mr. Quildon is constantly being treated to clear this fluid.

9. Mr. Quildon's immune system is unstable and he has to be careful who comes near him and contacts his skin. Any infection would be deadly to him. The doctors are planning

another operation, however, no operation can be preformed until his immune system and body temperature are stabilized, which still has not happened yet

10. Doctor Welton O'R.Nedd at Greater Southeast Community Hospital is Mr. Quildon's doctor, and as indicated in the attached letter, (Exhibit A), Mr. Quildon's cancer appears to not be spreading. However, that is only for the time being, and Mr. Quildon is again suffering from the same symptoms, possible indicating that the cancer has returned.

11. Since 1994, Mr. Quildon has had no further criminal convictions.

12. There is absolutely no evidence that Mr. Quildon is or ever has been a danger to the community. Additionally, there is no reason to think that he would not return to court when given notice to do so.

13. The Pre-Trial Services report recommended that Mr. Quildon be placed on personal recognizance pending trial with the condition that he report to the Pre-Trial Services Agency for drug evaluation and possible program placement.

14. If released, Mr. Quildon would continue live with his wife at 2501 Southern Avenue, Apartment 102, Temple Hills, Maryland 20748.

15. Mr. Quildon and his family are very worried that if he does not get proper treatment, (radiation and chemotherapy), Mr. Quildon will not survive the next bout with this deadful cancer.

## ARGUMENT

16. Congress enacted the Bail Reform Act of 1984 to give courts the authority to consider factors such as the likelihood of flight and community safety in making release

3

determinations.  In passing the Act, however, Congress did not intend to authorize the wholesale pretrial incarceration of all persons accused of criminal offenses.  Indeed, the Act expressly provides that "[n]othing in this section shall be construed as modifying or limiting the presumption of innocence." 18 U.S. Code Section 3142(j).  To the contrary, the passage of the pretrial detention provision of the 1984 Act bespeaks a recognition that "there is a small but identifiable group of particularly dangerous [persons] as to whom neither the imposition of stringent release conditions nor the prospect of revocation of release can reasonably assure the safety of the community or other persons. It is with respect to this limited group . . . that the courts must be given the power to deny release pending trial." S. Rep. No. 225, 98th Cong., 1st Sess. 6-7, reprinted in U.S. Code Cong. & Ad. News 3189 (emphasis supplied).  Mr. Quildon is not within that limited group. It is apparent from the Act's legislative history, as well as the statutorily mandated consideration of the least restrictive alternatives to detention, that Congress contemplated pretrial detention of only a small percentage of the individuals awaiting trial.

      17.     The legislative history of the Act also stresses that "[t]he decision to provide for pretrial detention is in no way a derogation of the importance of the [accused's] interest in remaining at liberty prior to trial.  It is anticipated that [pretrial release] will continue to be appropriate for the majority of federal defendants." *Id.* at 7, 12, *reprinted in*, 1984 U.S. CODE CONG. & AD. NEWS 3189.  Mr. Quildon is among that majority for whom a combination of conditions short of detention without bond can be fashioned to "reasonably assure" the safety of the community and his appearance for trial.  *See United States v. Orta*, 760 F.2d 887 (8th Cir. 1985). *See also* 18 U.S.C. §3142(c)(1)(B) (judicial officer shall order the pretrial release of an accused "subject to the least restrictive further condition or combination of conditions, that such

4

judicial officer shall determines will reasonably assure the appearance of the person as required and the safety of any other person and the community") (emphasis supplied).

18.     Courts have recognized that, consistent with the intent expressed in the 1984 Act's legislative history, the statutory scheme of § 3142 continues to favor release over pretrial detention. *See United States v. Orta*, 760 F.2d 887, 890-892 (8th Cir. 1985); *United States v. Miller*, 625 F. Supp. 513, 516-17 (D.Kan. 1985). In Mr. Quildon's case, his continued detention without bond is not the least restrictive alternative available that will assure the community's safety and his return for future court dates. *See U.S. v. Xulam,* 84 F.3d 441 (D.C. Cir. 1996. Especially, because of his medical condition, Mr. Quildon would be better off at home, surrounded by his loved ones who could comfort him and assist in his medical condition.

19.     Title 18 U.S.C. Section 3142(e) provides for pretrial detention if the government is able to show that no condition of release will reasonably assure the accused's appearance as required and the safety of any other person or the community. *See United States v. Salerno*, 481 U.S. 739, 741 (1987). This is not the case for Mr. Quildon. Clearly, his current incarceration has been detrimental to his health, because the jail does not readily seek medical attention for prisoners. On personal recognizance or placement in a half-way house, would permit Mr. Quildon to periodically seek medical attention, so that the cancer can be removed, contained or forced into remission.

**WHEREFORE** for the foregoing reasons, any which may appear at a full hearing on this matter, and any others this Court deems just and proper, Mr. Quildon, through counsel, respectfully requests that he be released into the Intensive Supervision Program of the Pretrial

Services Agency or, alternatively, released to the third party custody of the Department of Corrections, for placement in a halfway house.

Additionally, a hearing on this matter is requested. Counsel is available next week, Monday, Tuesday or Wednesday in the afternoon.

A proposed Order is attached.

Respectfully submitted,

/s/ Harry Tun
Harry Tun DC#416262
400 Fifth Street, N.W., Suite 300
Washington, DC 20001
202-393-2882

**CERTIFICATE OF SERVICE**

I hereby certify that on this 14th day of November, 2006, a copy of the foregoing to be delivered by electronic e-mail to Alexander Shawe, Assistant United States Attorney, Narcotics Section, 555 Fourth Street, N.W., Washington, D.C. 20530.

/s/ Harry Tun
Harry Tun, Esquire
