UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CRIMINAL NO. 05-206-01 (EGS) |
| v. : | |
| : | |
| HOUSTON QUILDON, : | |
| : | |
| Defendant. : | |

**UNITED STATES' MOTION FOR GUIDELINE CREDIT
AND MEMORANDUM IN AID OF SENTENCING**

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully moves the Court, pursuant to § 3E1.1(a) & (b) of the Sentencing Guidelines, to adjust the defendant's offense level down three levels reflecting the defendant's acceptance of responsibility for this offense. The United States also submits this memorandum in aid of sentencing.

**I.    BACKGROUND**

On May 26, 2005, the defendant was indicted on fourteen counts of distribution of cocaine base, including three counts of Unlawful Distribution of 50 Grams or More of Cocaine Base, in violation of Title 21 United States Code, Sections 841 (a)(1) and (b)(1)(A)(iii).  On June 13, 2007, the defendant pled guilty to Count Nine of the Indictment, Unlawful Distribution of 50 Grams or More of Cocaine Base, in violation of Title 21 United States Code, Sections 841 (a)(1) and (b)(1)(A)(iii).  At that time, the defendant signed a "Statement of offense" and admitted to following:

Had this matter proceeded to trial, the Government was prepared to prove beyond a reasonable doubt that on April 5, 2005, at approximately 4:40 p.m., a cooperating source who

was working with agents from the United States Park Police ("USPP") called defendant Houston Quildon's co-defendant, Denise Greene ("Greene"), on the telephone to discuss purchasing two ounces of cocaine base from defendant Quildon. During the telephone conversation, which was recorded, the cooperating source asked Greene to call defendant Quildon in order to inquire about the price of cocaine base, and to arrange a meeting the next day in order for the cooperating source to purchase the cocaine base from defendant Quildon. The defendant agreed to do so, and the telephone conversation ended.

Approximately 10 minutes later, the cooperating source called Greene again. During this second telephone conversation, which was also recorded, Greene indicated that she had talked to defendant Quildon, and Greene had arranged for defendant Quildon to meet the cooperating source the next day, April 6, 2005. Greene said that she had told defendant Quildon that the cooperating source "wanted to double-up," she had "asked for the same price," and she had reminded defendant Quildon that the price was "nine." The cooperating source explained that defendant Quildon had only given him 25 or 26 grams last time, and the cooperating source told Greene that he did not want anything less than "a deuce" this time. Greene said, "okay," and told the cooperating source that defendant Quildon was going to come to Greene's house.

The next day, April 6, 2005, at around 4:30 p.m., the cooperating source went to the Greene's home located at 1527 12th Street, Northwest, where he met Greene. Shortly thereafter, the cooperating source and Greene walked to a laundromat located on 11th Street and Rhode Island Avenue, Northwest. Defendant Quildon drove into the parking lot of the laundromat, and the cooperating source got into defendant Quildon's vehicle, where the cooperating source purchased two bags which contained a white, rock-like substance in exchange for $1,800.00 in

pre-recorded USPP funds. Thereafter, the cooperating source exited defendant Quildon's vehicle, left the area, and then met with a USPP agent who took custody of the substance that had been purchased from defendant Quildon. That substance was later submitted to the Drug Enforcement Agency's laboratory where chemical analysis determined that the substance was cocaine base, with a net weight of 54.9 grams. The transaction between the cooperating source and defendant Quildon was monitored and recorded through the use of an audio and video recording device worn by the cooperating source.

Additional Relevant Conduct

The Government was also prepared to prove beyond a reasonable doubt that on six (6) other separate occasions, the cooperating source contacted Greene by telephone to discuss the purchase of cocaine base from defendant Quildon. During these six (6) telephone conversations, Greene agreed to contact defendant Quildon on the cooperating source's behalf in order to arrange the purchase of cocaine base. The six (6) telephone conversations between the cooperating source and Greene took place on February 16, 2005, February 22, 2005, March 1, 2005, March 14, 2005, April 20, 2005, and May 11, 2005, and each telephone conversation was recorded by USPP agents. Following each of these six (6) telephone conversations, the cooperating source would meet defendant Quildon at either Greene's home at 1527 12th Street, Northwest, or at a laundromat located at 11th Street and Rhode Island Avenue, Northwest, and the cooperating source would purchase a quantity of crack cocaine base from defendant Quildon. These transactions were captured by USPP agents on either audio tape, or video tape, or both audio and video tape.

On February 16, 2005, the cooperating source purchased cocaine base with a net weight of 2.9 grams from defendant Quildon. On February 23, 2005, the cooperating source purchased cocaine base with a net weight of 5.6 grams from defendant Quildon. On March 2, 2005, the cooperating source purchased cocaine base with a net weight of 27.6 grams from defendant Quildon. On March 16, 2005, the cooperating source purchased cocaine base with a net weight of 22.2 grams from defendant Quildon. On April 21, 2005, the cooperating source purchased cocaine base with a net weight of 54.4 grams from defendant Quildon. On May 12, 2005, the cooperating source purchased cocaine base with a net weight of 54.5 grams from defendant Quildon.

## II.   SENTENCING CALCULATION

### A.   Statutory Minimums and Maximums

Pursuant to 21 U.S. Code Sections 841(a)(1) and (b)(1)(A)(iii), the crime of Distribution of Fifty (50) Grams or More of Cocaine Base carries a penalty of a term of imprisonment of not less than 10 years or more than life, a fine of not more than $4 million, and a term of supervised release of at least five (5) years.

### B.   Sentencing Guidelines Calculation

The Guidelines calculation utilized in the Presentence Investigation Report ("PSR") calculates the defendant's total offense level at 34. See PSR ¶ 22. (This calculation contemplates a three-level decrease to the defendant's base offense level pursuant to Section 3E1.1 of the Guidelines). The PSR calculates the defendant's criminal history as Category VI. See PSR ¶ 34. Therefore, the PSR calculates the Guideline range for the defendant at 262 to 327 months. See PSR ¶ 81.

### III. GOVERNMENT'S RECOMMENDATIONS

#### A. Acceptance of Responsibility

The government agrees that the defendant's base offense level should be decreased by three points pursuant to Section 3E1.1 of the Sentencing Guidelines. He entered a guilty plea, thereby admitting the conduct comprising the offense, and he has cooperated in the pre-sentence investigation. Accordingly, the government is moving the Court to grant a three-level decrease in the offense level pursuant to § 3E1.1 of the Sentencing Guidelines.

#### B. Application of the Federal Guidelines post-Booker

The Court should impose a sentence at the lowest end of the Guidelines range. "The district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing." United States v. Booker, 125 S. Ct. 738, 767 (2005) (citing 18 U.S.C. Sections 3553(a)(4)&(5) (Supp. 2004)). The Guidelines, aiming to achieve the uniform and appropriate treatment of like crimes, represent the distillation of two decades of careful study of sentencing practices across the country, and correlate as well to the varying severity of crimes as defined by Congress. A sentence within the Guideline range is reasonable in this case because it would help further the goals articulated in 18 U.S.C. Section 3553(a) such as "the need for the sentence imposed -- (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (c) to protect the public from further crimes of the defendant; and (D) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."

C.  Basis for Government's Sentencing Recommendation

Pursuant to 18 United States Code, Section 3553(a), the Court should impose a sentence at the lowest end of the defendant's guideline range, that is 262 months. This low-end Guidelines sentence is appropriate for a number of reasons. The serious nature and circumstances of the offense justifies imposition of 262 months imprisonment. Here, the defendant pled guilty to a very serious drug felony, the sale of 54.9 grams of crack cocaine – he is moreover responsible for the sale of 222.1 grams of crack cocaine over the course of seven sales to the this one undercover officer alone. Defendant's criminal record – including two prior felony convictions for drug offenses and numerous other arrests – demonstrate that he is a career criminal in both the technical and common sense meanings of the word. He simply has not learned a thing from his many encounters with the law, including his numerous periods of probation. (At the time of these offenses, he was on parole to Virginia.) Perhaps of greatest concern, defendant has three convictions for weapons offenses, and that, combined with his drug sales, makes him very dangerous to the community. At his age – 43, and given his extensive criminal history, defendant comes to the Court as a man who has made a settled choice in life to continue breaking the law in a serious and dangerous manner. This Court has little choice but to incapacitate him for a very significant period of time at the low end of defendant's guideline range, that is 262 months imprisonment. Finally, in this case a Guidelines sentence is necessary, among other reasons, because there are no factors that warrant the defendant being treated differently from other similarly situated defendants.

## IV. CONCLUSION

Wherefore, the government respectfully requests that the Court sentence the defendant at the lowest end of the Guidelines to a period of 262 months of incarceration.

                Respectfully submitted,

                JEFFREY A. TAYLOR
                UNITED STATES ATTORNEY
                D.C. BAR NO. 489-610

BY:    ___/s/ David P. Saybolt_____
         DAVID P. SAYBOLT
         Assistant United States Attorney
         Virginia Bar # 44518
         U.S. Attorney's Office
         555 Fourth Street NW, Room 4840
         Washington, DC 20530
         (202) 307-6080
         David.Saybolt@usdoj.gov